IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S. CHARLES KELLY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 09-2152 |
| BOEING, INC. | : | |

**MEMORANDUM**

Ludwig, J.                                                                                       May 26, 2011

      This is an employment discrimination case. Jurisdiction is federal question. 28 U.S.C. § 1331. The complaint alleges that defendant Boeing, Inc. terminated plaintiff S. Charles Kelly's employment in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. The parties submitted to mediation and subsequently reported that a settlement had been reached, but that plaintiff refused to execute a settlement agreement. Presently pending is defendant's motion to enforce the settlement. On March 10, 2011, a hearing was held to determine whether an enforceable settlement was reached. Defendant's motion will be granted, the settlement agreement enforced according to the terms reported by the parties, and this action dismissed with prejudice.

      Plaintiff was represented by Ronald Surkin, Esquire and Gallagher, Schoenfeld, Surkin, Chupein & DeMis, P.C. pursuant to a contingent fee agreement. N.T. 13, 43; Boeing-2. Over the course of the case, plaintiff and Surkin discussed settlement many times and in-depth to prepare for a mediation before the Honorable Diane M. Welsh (ret.). N.T. 14, 43. At the mediation, it appeared that Boeing would not pay $150,000 to settle the case. An offer of $150,000 would not have been acceptable to plaintiff. N.T. 15. The lowest

number that plaintiff had considered accepting at the time of the mediation was $270,000. N.T. 16, 26.

Following the mediation, Judge Welsh informed Surkin that Boeing was willing to pay more than $150,000. N.T. 16. On Friday, January 29, 2011, Surkin called plaintiff and asked plaintiff to consider whether he would accept less than $270,000 to settle the case. Id. Plaintiff does not recall this conversation. N.T. 48.

Plaintiff and Surkin agree that on Monday, February 1, 2011, they engaged in an extensive ( 30-45 minutes) telephone discussion[1] regarding plaintiff's settlement position. N.T. 48. In particular, Surkin explained the details of what a $270,000 settlement "would mean for [plaintiff] exactly in terms of money in his pocket" in view of the existing contingent fee agreement. N.T. 17. Surkin asked plaintiff to consider a settlement figure lower than $270,000 in conjunction with a reduction in Surkin's firm's fee from 40% to one-third and explained what that would mean in terms of money in plaintiff's pocket. N.T. 18. Plaintiff understood these calculations, but wanted to know how any settlement figure would reflect values placed on his claims for severance, pension and other benefits. N.T. 19, 53.[2]

---

[1] According to Surkin, plaintiff initiated this call - N.T. 22; according to plaintiff, Surkin did - N.T. 45. During the conversation, plaintiff was travelling to a doctor's appointment. N.T. 21, 59. Plaintiff did not request that the conversation be postponed because he was not feeling well. N.T. 60. Surkin was aware that plaintiff was on his way to the doctor, but did not feel that plaintiff was impaired or unable to understand the conversation. N.T. 21.

[2] Both men agree that this was an issue that plaintiff and Surkin had discussed many times on prior occasions. N.T. 32, 50 Surkin testified that he had previously explained to plaintiff "that the settlement numbers we were talking about were issues of judgment, you could not relate this to a specific computation, and there's no question he understood what I was saying. . .

2

Initially, he was not comfortable discussing a lower settlement figure, and requested that Surkin demand $270,000. N.T. 21, 27. During the conversation, he felt that he was being pressured to reduce his demand.[3] N.T. 52.

Both men agree that at the end of the conversation, plaintiff named a lower settlement figure: $225,000. Plaintiff recalls saying, "Well, look, 225, but I need some type of explanation as to what this 225 represented." N.T. 49. According to Surkin, "[Plaintiff] expressly authorized me to make the $225,000 offer and I did that. I said, Okay, I will do that." N.T. 19, 23.

Following the discussion, Surkin conveyed an offer to settle the action for $225,000 to defendant through Judge Welsh. N.T. 20. Defendant accepted the offer by e-mail. Id. A proposed settlement agreement was attached to the e-mail. N.T. 42, Boeing-1. (E-mail with attachment). Upon being told on the afternoon of February 1 that Boeing had accepted the offer, plaintiff told Surkin, "We're going to have to hit the reset button," meaning he would not go through with the settlement. N.T.64. Plaintiff admitted upon questioning that

---

whatever number we settled for, was not going to be a precise calculation." N.T. 34. This was not plaintiff's first settlement negotiation. He previously settled employment claims against Wyeth Pharmaceuticals. N.T. 57

[3] Plaintiff testified that when he refused to reduce his demand, Surkin "indicated that I would have to get myself another lawyer." N.T. 60. Surkin denies this, stating that it was not until the next day, when he was discussing the consequences of plaintiff's refusal to execute a settlement agreement that he advised plaintiff that he would need to retain new counsel. N.T. 31, 35-37.

.

3

he is not disappointed with the settlement figure itself. N.T. 61. Rather, he maintains that he conditioned his offer to settle for $225,000 on the receipt of an explanation as to how that figure would be broken down as between backpay, benefits and other elements of his demand. Because he did not receive that information, he would not go through with a settlement. N.T. 53, 61, 64. Plaintiff agrees that he did not tell Surkin that he might want to change the figure depending on the breakdown he was provided. Id.

A court has jurisdiction to enforce a settlement agreement entered into between the parties. Bershak v. Philadelphia Gas Works, 2001 WL 193702, at *1 (E.D. Pa., Feb 26, 2001), citing McCune v. First Judicial Dist. of Pa., 99 F.Supp.2d 565, 566 (E.D. Pa. 2000). A settlement agreement need not be in writing to be enforceable. It becomes binding once the parties have mutually agreed to its terms and conditions. Id., citing Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970); Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3d Cir. 1962).

Based on the evidence, Surkin had authority to offer to settle plaintiff's claims for $225,000 and Boeing accepted the offer. The agreement reached did not exclude any essential terms, and a settlement existed notwithstanding plaintiff's refusal to execute the proposed settlement agreement. Even now, plaintiff does not object to any term of the settlement entered into with Boeing, specifically the agreed-to settlement figure. He argues only that his counsel should have provided him with a breakdown of the allocation of the settlement proceeds among the various categories of damages claimed before the settlement

4

was concluded.

Accordingly, under the law and the evidence, defendant's motion to enforce the settlement must be granted.

BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.